[No. 13056.   Department Two.   August 21, 1916.]

MARY RIDPATH ANKENY, *Executrix etc., Appellant,* v. THE CITY OF SPOKANE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—"LOCAL IMPROVEMENTS" — PERMANENCY —ELECTRICAL ENERGY FOR LIGHTING SYSTEMS—STATUTES.   3 Rem. & Bal. Code, § 7892-6, authorizing cities to order the construction of a street lighting system for a local improvement district and assess the cost of the same together with the cost of furnishing electrical energy therefor, is not unconstitutional in that the furnishing of electrical energy is not a "local improvement" within Const., art. 7, § 9, vesting power in cities to make local improvements by assessments; notwithstanding the operation was limited to a period of ten years, since permanency is not an essential element, and the plant would be of no benefit to the property without the electrical energy.

SAME.   The fact that the cost of operation exceeds the cost of the plant is not an objection to local assessments in that it is properly a subject for general taxation, where the system has a local situs and does not extend over the city at large.

SAME.   The assessment is not void because some of the features of the system are purely ornamental, as the character of the plant is largely in the discretion of the city; and it cannot be said as a matter of law that ornamental posts and lamps so far depart from ordinary construction as to exceed the limits of the power of the city.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered April 12, 1915, confirming

[1]Reported in 159 Pac. 806.

an assessment roll for a public improvement upon appeal from the city council, after a hearing before the court. Affirmed.

*D. W. Henly* and *James M. Geraghty*, for appellant.

*H. M. Stephens, Ernest E. Sargeant,* and *Dale D. Drain* (*A. H. Kenyon,* of counsel), for respondent.

FULLERTON, J.—Section 6 of chapter 98 of the Laws of 1911, p. 442, relating to local improvements in cities and towns, as amended by chapter 131 of the Laws of 1913, p. 409 (omitting parts not essential to the questions in controversy here), reads as follows:

"Section 6. Whenever the public interest or convenience may require, the council, or other legislative authority of any such city or town, is hereby authorized to order the whole or any part of the streets . . . within any such city or town to be . . . improved, and to order . . . street lighting systems, together with the cost, and expense of furnishing electrical energy to said street lighting systems, . . . to be constructed, . . . therein; and to levy and collect special assessments to pay the whole or any part of the cost and expense of any such improvement. . . . Any local improvement payable, in whole or in part, by special assessments, which shall include a charge for the cost and expense of furnishing electrical energy to any system of street lighting shall be initiated only upon petition signed by the owners of two-thirds of the lineal frontage upon the improvement to be made and two-thirds of the area within the limits of the proposed improvement district." 3 Rem. & Bal. Code, § 7892-6.

Acting under and in pursuance of this section of the statute, and in pursuance of a petition of the requisite number of property owners, the legislative authority of the city of Spokane passed an ordinance ordering the improvement of a part of the First avenue in that city, "by installing, operating, and maintaining for a period of ten years after installation, an ornamental street lighting system therein," ac-

cording to specifications adopted by the ordinance. The ordinance provided that the cost of installing, operating and maintaining the system for the time specified, including all the necessary and incidental expenses, should be borne by and assessed against the property included within the district therein created, except twenty-five per centum of the cost, which it was provided should be borne by the city from its general fund. Subsequently a contract was let for the construction and maintenance of the system. The contract price was for a lump sum of $66,429, payable in ten equal annual installments, without interest, save on deferred payments. While the contract covered three distinct and several items, namely, the construction of the lighting plant proper, the maintenance of the plant for a period of ten years, and the supplying of it with electrical energy for the same period, the cost of the individual items are not set forth therein. Their relative proportions to the whole can be gathered, however, from the preliminary estimates of the city engineer. That officer estimated the total cost of the three items mentioned at $63,624, allowing for the first item $17,600, for the second $10,824, and for the third $35,200; thus showing that the cost of furnishing the electrical energy for the ten-year period exceeds the cost of the plant plus the cost of its maintenance for a like period.

One W. M. Ridpath owned property situated in the improvement district, and on the initiation of the improvement proceedings, filed a protest against the same. Between the initiation of the proceedings and the return of the assessment roll, Ridpath died, and his daughter, the appellant in the present proceeding, was appointed administratrix of his estate. As such administratrix, she filed objections to the assessment roll, which were disallowed by the city and the roll confirmed. She appealed therefrom to the superior court of Spokane county, when again her objections were overruled and a judgment entered confirming the roll in all

respects. From the last mentioned judgment, she appeals to this court.

The appellant makes no question as to the regularity of the proceedings, nor does she question the sufficiency of the statutory grant of authority to the city to create the improvement, apart from the constitutional power in the legislature to make the grant. Her principal contention is that the statute itself is unconstitutional, because not within the grant of power conferred by § 9 of art. 7 of the constitution, which provides that, "The legislature may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessments, or by special taxation of property benefited;" the precise contention being that the furnishing of electrical energy for street lighting purposes is not a "local improvement," within the meaning of that term as used in the constitution. Certain minor contentions will be noted later.

All of the authorities agree that a local improvement to be chargeable upon private property as such must possess at least two essential elements; (1) the improvement must be of a public nature, as contradistinguished from one purely private, that is, it must be an improvement of such a nature as the municipality would be justified in constructing and maintaining by general taxation; and (2) it must confer a special benefit on the property sought to be specially charged with its creation and maintenance, over and above that conferred generally upon property within the municipality. To these some of the courts have added a third element, namely, that of permanency; denying the power of local assessment in those instances where the improvement is of an evanescent nature or type. It is on this principle the appellant bases her contention that the statute authorizing a local assessment for the cost of furnishing electrical energy to a street lighting plant is unconstitutional. She argues that the phrase "local improvement" necessarily presupposes permanent physical additions to the streets, and that electrical energy

is not a permanent physical addition, but is of an evanescent nature, vanishing as soon as the mechanical operation which creates it ceases.

The idea that permanency of the improvement is an essential to the charging of the expense thereof as a local improvement to property benefited is peculiarly the doctrine of the courts of Illinois. A case frequently cited is *Chicago v. Blair*, 149 Ill. 310, 36 N. E. 829, 24 L. R. A. 412, where it was held that the sprinkling of streets is not a local improvement subject to be made a charge upon abutting or adjacent property. The power to sprinkle the street at the expense of the general taxpayer was not denied, but it was held that such work was not of a character that the cost of the same could be charged to the abutting property as a local improvement. In the course of the opinion it was said:

"A local improvement, within the meaning of the statute, is a public improvement which by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality. The only basis upon which either special assessment or special taxation can be sustained is, that from the proposed local improvement the property subjected to the tax or assessment will be enhanced in value to the extent of the burthen imposed. . . . If, therefore, from an inspection of the ordinance authorizing the making of the improvement, it appears from the nature of the work proposed that the market value of abutting or adjacent property would not be increased thereby, as a matter of law it would not be a local improvement, within the meaning of the statute, and no declaration of the corporate authorities could make it so. . . .

"But the term 'local improvement,' prior to the adoption of the constitution and passage of the act in question, had, by common usage, a well defined meaning, and it will be presumed to have been employed in the sense thus attributed to it. It was understood, as applied to a street, as signifying the improvement of the street, as such, and for the purposes for which it was designed, made in a particular locality, by reason of which the real property, abutting or adjacent,

was specially benefited in its market value. . . . Further citation will be unnecessary. Used, as it is, in connection with special assessments, which are necessarily based upon the idea of equivalent benefits to the property owner, the idea of permanency in the improvement is necessarily involved,—that is, the benefit must flow from the actual or presumptive betterment of the street, and must be of such character as to enhance the market value of the property. . . .

"It can not, we think, in any just sense, be said that street sprinkling is an improvement, within the contemplation of article 9 of the cities and villages act. In the nature of things, the sprinkling is only useful while the work is continued. In a few hours the beneficial effects are gone, and the property is worth no more than before the street was sprinkled."

The same principle was announced in *Kansas City v. O'Connor*, 82 Mo. App. 655; *New York Life Ins. Co. v. Prest*, 71 Fed. 815; and in *Stevens v. Port Huron*, 149 Mich. 536, 113 N. W. 291, likewise street sprinkling cases.

In *State ex rel. Stateler v. Reis*, 38 Minn. 371, 38 N. W. 97, also a street sprinkling case, a different view of the question was taken. In the opinion is the following:

"The relator's main contention, however, is that street sprinkling is not an 'improvement,' within the meaning of this section of the constitution, because it lacks the element of permanence; that its results are transient; that, to constitute an improvement, there must be some work or structure, such as a pavement, sidewalk, or the like, that will remain after the labor is performed, and permanently enhance the value of the property. But, if permanence or durability is to be the test, how long must the beneficial results last in order to constitute an improvement? It certainly will not be claimed that the work must be eternal in duration, or imperishable in character. We are unable to see any difference in principle between the work of street sprinkling, the results of which, unless repeated, last but a day, and the construction of a block pavement or wooden sidewalk, which wears out or decays, and has to be rebuilt, every few years. When a pavement or sidewalk has worn out, the future value of the property is not enhanced by it, any more than it is

by street sprinkling when that ceases. Neither do we see that it makes any difference whether the substance applied to the surface of the street is wood, which has to be renewed every few years, or water, which has to be applied daily. Each benefits the adjacent property as long as it lasts, and no longer. It is not the agency used, or its comparative durability, but *the result accomplished,* which must determine whether a work is an improvement in the sense in which that word is here used. The only essential elements of a 'local improvement' are those which the term itself implies, viz., that it shall benefit the property on which the cost is assessed in a manner local in its nature, and not enjoyed by property generally in the city. If it does this,—rendering the property more attractive and comfortable, and hence more valuable for use,—then it is an improvement. That the regular and systematic sprinkling of a street has this effect upon the property fronting on it is a matter of common knowledge. This construction is fully warranted by the definitions of the word 'improvement' given by lexicographers. It has been defined as 'that by which the value of anything is increased, its excellence enhanced, or the like;' or 'an amelioration of the condition of property affected by the expenditure of labor or money, for the purpose of rendering it useful for other purposes than those for which it was originally used, or more useful for the same purposes'."

The view taken by the Minnesota case was followed in *Sears v. Board of Aldermen of Boston,* 173 Mass. 71, 53 N. E. 138, 43 L. R. A. 834. In that case it was said:

"It is a grave question whether the benefit that comes to abutting property from the watering of the street in front of it is such an improvement to the property that it can be made the subject of an assessment upon it. There must be a real substantial enhancement of value growing out of a public work to warrant an assessment of special taxes upon particular estates on account of it. The watering of streets produces only transitory effects, and makes no permanent change in the condition of the property. It greatly promotes the health and comfort of the people generally, who use the streets from time to time, but its greatest benefit is to the abutting estates as places for residence or the transaction of business. Indeed, so much more important to the

occupants than to the general public have been the benefits from watering streets that until lately the expense of the work in this commonwealth has usually been borne by the abutters, who have procured the watering to be done by private contractors. If a special benefit, accruing from day to day, which very materially increases the rental value of real estate by reason of the proximity of the property to the place where the beneficial work is done, can be treated as an improvement within the reason of the rule which permits special assessments, then such assessments may be made to pay the expense of watering streets. With some hesitation, we hold that there is an improvement of private property, when this work is done by a city regularly from day to day, which may warrant an assessment upon the abutters."

But whatever doubts may then have existed in the mind of the court, the principle has become settled law in Massachusetts. *Sears v. Street Commissioners of Boston,* 173 Mass. 350, 53 N. E. 876; *Phillips Academy v. Inhabitants of Andover,* 175 Mass. 118, 55 N. E. 841, 48 L. R. A. 550; *Stark v. Boston,* 180 Mass. 293, 62 N. E. 375; *Hodgdon v. Haverhill,* 193 Mass. 327, 79 N. E. 818. To the same effect is *City of Roswell v. Bateman,* 20 N. M. 77, 146 Pac. 950; although the court does not specially discuss the idea of permanency of the improvement as affecting the power.

In *Reinken v. Fuehring,* 130 Ind. 382, 30 N. E. 414, 30 Am. St. 247, 15 L. R. A. 624, it was held that the cost of sweeping the streets could be made a charge on the abutting property as a local improvement. In the opinion it is said:

"It is matter of common observation, of which we must take notice, that property located upon well improved streets, kept clean, is more desirable than property on unimproved streets where mud and filth are permitted to accumulate and obstruct their use. It is safe to assert, we think, that keeping a street clean adds to the rental, if not to the permanent value of property located thereon; and for this reason, among others, the abutting property-owner has a special interest in such cleaning not enjoyed by the general community. For the reason that the public in general has an interest in keep-

ing the streets free from filth, the city may, in exercising the police power conferred upon it by the state, order them swept, and for the further reason that the abutting property owner derives a benefit from such sweeping not enjoyed by the general public he may be required, by assessments, to pay the expenses incident to such sweeping.

"It follows from what we have said that the assessments provided for by the act under consideration do not amount to a taking of private property without compensation and without due process of law.

"Assessments of the kind we are now considering are made upon the principle that the person assessed is benefited in the increased value of his property, either rental or permanent, over and above the benefits received by the public, in a sum equal to the amount he is required to pay. It is upon this theory alone that they can be sustained."

In none of our own cases have we been called upon to meet the question. The nearest approach to it, perhaps, is the case of *Northern Pac. R. Co. v. Adams County*, 78 Wash. 53, 138 Pac. 307, 51 L. R. A. (N. S.) 274, where we held constitutional the statute imposing upon abutting property the duty of destroying noxious weeds growing upon the public highways. The case was rested upon the police power. This language, however, was used in the opinion:

"Their [the noxious weeds] destruction is a benefit principally to the property owners, because, if the property owners are required to destroy the noxious weeds upon their lands and such weeds are permitted to grow in the highways, the destruction of the weeds upon their lands is of no practical benefit. It is necessary that the weeds upon the highways be destroyed as well as those upon the adjoining lands. It is reasonable, we think, that the owners of lands may be required to destroy noxious weeds to the center of the highways abutting thereon as a special benefit to their own lands."

In *Smith v. Seattle*, 25 Wash. 300, 65 Pac. 612, we quoted with approval the definition of a local improvement found in the case of *State v. Reis, supra.* We also quoted with ap-

proval from Cooley on Taxation, to the effect that the maintenance of water mains "and the supplying of water, are necessarily a continuing expense, and for these reasons the assessment of the cost upon adjacent property is within the general principle of local assessments." Neither of these cases called for a determination of the question whether permanency is an essential to a local improvement, but it is inferable from the reasons given to sustain the rulings made that the court was inclined to the doctrine of the court of Minnesota rather than that of the court of Illinois.

All of the cases where the question has been raised seem to agree that the expense of erecting the lamp posts, the conduits for the wires, and the cost of the wires and lamps necessary for an electric street lighting system may be charged to the property benefited as a local improvement. No case has been called to our attention, however, where it has been determined that the electric energy necessary to light the plant may be treated as a part of the plant and the cost thereof charged to the property benefited as a local improvement.

Following the rule of the courts which do not require permanency as an essential element of a local improvement, we see no reason why it may not be so charged. It is from the electric current that the light is derived, and it is the light that furnishes the entire benefit to the property. The lamp posts, the conduits, wires and lamps are but the means of carrying the current and diffusing the light at the proper places. Of themselves they are of no benefit to property abutting upon the streets in which they are constructed. On the contrary, standing alone they would be obstructions in the streets, narrowing and hindering its use as such, of no possible benefit to the public at large, and rendering abutting property of less rather than of greater value. No rule of law would justify their erection and maintenance in a street were they not the necessary means to a desired end. It is difficult to

understand, therefore, why the cost of this mechanical part of the improvement can be charged to abutting property specially benefited by the lighting of the street while the cost of the electric energy, without which there can be no completed improvement, cannot be so charged. We think there is no room for such a distinction, that the mechanical contrivances and the electrical energy are but parts of a complete whole, and that it is the whole and not one of the parts that confers the benefits. As such, it seems to us clear that the cost of the whole may be charged as a local improvement, in so far as private property is benefited thereby.

But it is said there is a difference between the construction of a local improvement and its operation, that while the one may be of such a local benefit as to justify a local assessment for its cost, the cost of operation cannot be so charged because that is a general municipal duty rather than the duty of any particular locality. But we can conceive of no reason for this distinction. There are, of course, many public improvements from which private property receives an incidental advantage which are held to justify only general taxation. The rule has been especially applied to public thoroughfares which have been improved at the expense of local property and which have by use become out of repair, it being held that the local property could not be charged with the cost of keeping the street in repair. But the improvement of a street usually causes an increase of travel thereon by the general public, and consequently an increase of wear over normal conditions. It is not just that the abutting property owners should be charged with the expense caused by this increase of travel, and the courts generally hold that the burden cannot be placed on them. But the situation with reference to an electric lighting system is in no way analogous. The system may have a local situs, benefiting only that part of the city wherein it is situated. It is of such a nature that increased use of the street by the public does not impair its efficiency, or add to the cost of its maintenance or operation.

When, therefore, the system does not extend over the city at large but is confined to a part of the city only, it is manifest that it may be almost wholly of local benefit, rendering it unjust to the general taxpayers of the city to be charged with the entire cost of its maintenance and operation. Such is the situation here. This plant is local with relation to its situs. While it may benefit the city at large in some degree, its greatest benefit is to the locality wherein it is situated, and we see no reason why its cost of operation as well as the cost of construction and maintenance may not be charged to the local property to the extent of the benefits.

A further contention is that the assessment is void because the improvement contained features of purely ornamental nature, thus greatly increasing the cost of the plant and consequent assessments beyond the necessities of the case. But the character of the plant which may be installed must rest largely in the discretion of the municipal officers having the authority to direct its installation. It may be that this discretion could be so far abused as to require the courts to hold void any attempt to levy a local assessment to meet its cost, but the ordinary remedy would be to allow an assessment up to the value of a proper plant. In the instant case, we think that, if any remedy could be afforded, it would be the latter. Here, however, the evidence does not justify even this modification. The nature of the improvement is shown only in the plans and specifications for the work. These show a system of underground conduits carrying wires to the several lamp posts, which are of cast iron fastened to a concrete base, carrying at the top a lamp of the type known as the "Inverted Ornamental Luminous Arc Lamp." The scheme does away with overhead wires, with their accompanying wooden poles in common use. The system, in its general scheme, is clearly within the powers of the municipality, and the posts, which are the only part of the plant designed for ornament, do not so far depart from ordinary construction as to warrant the court in saying, as a matter of law, that

the proportional part of the cost which the city assessed to the property benefited was in excess of its legitimate powers.

The judgment below should be affirmed, and it is so ordered.

MOUNT, MAIN, PARKER, and HOLCOMB, JJ., concur.