78 P.3d 1279 (2003)
Rud OKESON, Doris Burns, Walter L. Williams, and Arthur T. Lane, individually and on behalf of the class of all persons similarly situated, Appellants,
v.
CITY OF SEATTLE, Respondent.
The City of Seattle, a first-class charter city; The City of Burien, a noncharter code city; The City of Lake Forest Park, a noncharter code city; The City of Sea-Tac, a noncharter code city, Respondents,
v.
Brian Sonntag, State Auditor; The State of Washington; The City of Shoreline, a noncharter code city; and The City of Tukwila, a noncharter code city, Respondents,
Rud Okeson, City Light Department Rate Payer, Appellant Intervenor.
Nos. 73227-2, 73228-1.
Supreme Court of Washington, En Banc.
Argued May 20, 2003.
Decided November 13, 2003.
*1281 Helsell Fetterman Martin Todd & Kokanson, David Jurca, Jennifer Divine, Seattle, for appellants.
*1282 Seattle City Attorney, William Patton, Asst., Rebecca Cochran Earnest, Asst., Seattle, Christine Gregoire, Atty. Gen., Brian Buchholz, Asst., James Pharris, Asst., Olympia, Michael R. Kenyon, Kenyon Desend PLLC, Issaquah, Ian Sievers, Shoreline, Kenyon Dornay Marshall PLLC, Robert Noe, Issaqua, for respondents.
*1280 FAIRHURST, J.
In 1999, the city of Seattle (hereinafter Seattle) passed Ordinance 119747, transferring the responsibility to pay for streetlights from Seattle's general budget to Seattle City Light (hereinafter City Light) customers in Seattle. After questions were raised as to the legality of the ordinance, Seattle brought a declaratory action to validate the ordinance. The trial court initially ruled against Seattle; however, after the legislature amended the statute regarding municipally owned utilities, the trial court reversed its earlier decision and entered a summary judgment order upholding the ordinance. Appellants sought review with this court claiming that the ordinance imposes a tax in violation of the Washington Constitution. We agree and reverse the trial court.

I. FACTS
In 1905, Seattle created City Light as a separate department of Seattle's government. City Light supplies electricity not only to Seattle but to several suburban cities under franchise agreements and ordinances passed by each city. City Light's revenues and expenses are managed by the Light Fund, a special fund used solely for the operation and maintenance of the City Light utility. The Light Fund is maintained separately from Seattle's general funds that are used for Seattle's other purposes.
Prior to 1999, City Light treated Seattle, and the other suburban cities it served, as customers and billed them for electricity consumed for general city purposes, including street lighting. In order to move costs from itself to City Light customers in Seattle, Seattle passed Ordinance 119747 in November 1999. Under the ordinance, costs of Seattle streetlights would be borne by all City Light ratepayers in Seattle through an increase in their light rates.[1] Except for streetlights, Seattle otherwise continued to pay for its electricity usage.
In January 2000, the Seattle Rate Advisory Committee (hereinafter Committee), a group appointed by the mayor and city council, sent a letter to Seattle challenging the council's adoption of Ordinance 119747. The Committee then notified the state auditor. After conferring with City Light, the state auditor sought advice from the state attorney general and received an informal memorandum concluding that city street lighting is a public governmental function, the costs of which must be borne by Seattle's general fund, unless the law specifically provides otherwise. Noting that there was no statute calling for payment from another fund, the informal memorandum concluded that the costs of streetlights should be paid out of the general fund, and that shifting streetlight costs to customers violated RCW 43.09.210, the local government accounting statute.[2]
The state auditor's office and Seattle had several discussions and a meeting in May 2000 regarding the legality of the ordinance, but were unable to reach agreement. In a formal opinion dated January 17, 2001, the attorney general found that "[i]n the absence of express statutory authority, the maintenance and operation of street lights are not a lawful charge against the customers of a city water, sewer, electric, or transportation utility." 2001 Op. Att'y Gen. No. 1, at 1. The *1283 formal opinion also noted that the purpose of the charge is to raise revenue because the fees do not regulate street lighting, and the costs for providing it would otherwise come from other city funds. Id. at 5.
Based upon the attorney general's opinion, the state auditor issued a draft audit finding in February 2001, concluding that electric ratepayers in Seattle and the franchise cities were unlawfully subsidizing the general funds of these cities. The state auditor also began to address this streetlight cost interpretation with other cities that had a billing practice similar to the one created by Seattle's ordinance.
Seattle, along with most of City Light's franchise cities, then filed a declaratory action, Seattle v. Sonntag, against the state auditor, the State of Washington, and others, seeking to validate its cost-shifting ordinances and franchise agreements. The State counterclaimed, praying instead that the cost-shifting scheme should be held invalid on numerous grounds, including that it was an unlawful tax and a violation of the local government accounting statute.
Both parties moved for summary judgment on only two issues: (1) Whether cities had authority to shift the costs for maintaining city streetlights to electric utility ratepayers, and (2) whether such charges are taxes that can be imposed only pursuant to express taxing authority, as opposed to electric rates, fees, or other such charges. Rud Okeson, a member of the Committee, filed a motion to intervene in Seattle v. Sonntag to raise several issues not addressed by the parties, including the purported local government accounting statute violations, but the intervention motion was denied.
King County Superior Court Judge Palmer Robinson denied Seattle's motion for summary judgment and granted the defendant State's summary judgment motion, holding that: (1) Seattle and the other plaintiff cities lacked authority to conduct the general governmental function of street lighting as an integral part of their separate and distinct proprietary functions of operating a municipal electric utility, and (2) the cities' imposition on electric utility customers of a rate or other charge for the maintenance and operation of streetlights was an unauthorized tax. Plaintiffs appealed and Okeson sought discretionary review of the denial of his intervention motion.
Thereafter, Okeson and three other class representatives filed a separate class action, Okeson v. Seattle, on behalf of City Light ratepayers seeking declaratory and injunctive relief and refunds of the charges imposed under Ordinance 119747. King County Superior Court Judge Joan DuBuque presided over that action.
While the cases were pending, the legislature in the 2002 legislative session amended RCW 35.92.050, the statute governing a municipality's authority to run an electric utility. Prior to 2002, RCW 35.92.050 discussed electric utilities, but did not specifically mention streetlights so it was unclear whether RCW 35.92.050 allowed a city to incorporate streetlights within an electric utility's general rates. The attorney general could find no cases in the entire country, let alone Washington, dealing with this issue. 2001 Op. Att'y Gen. No. 1, at 2. In practice, however, several other cities that owned their own electric utilities billed ratepayers for the cost of street lighting and this practice had gone unchallenged with cities passing earlier audits by the state auditor. Clerk's Papers (CP) 50, 122.
In 2002, the legislature clarified the ambiguity by inserting a phrase into RCW 35.92.050:
A city or town may also construct, ... maintain and operate ... facilities for the purpose of furnishing the city or town and its inhabitants ... with ... electricity, and other means of power and facilities for lighting, including streetlights as an integral utility service incorporated within general rates, ... with full authority to regulate and control the use, distribution, and price thereof.
Laws of 2002, ch. 102, § 3.
The legislature stated that the "purpose of this act is to affirm the authority of cities and towns to operate fire hydrants and streetlights as part of their rate-based water and electric utilities, respectively." Id. § 1. The legislature also stated that "it has been the *1284 intent of the legislature that cities and towns, just as water and sewer districts, have the right to operate and maintain streetlights in the same manner as fire hydrants, that is, as a normal part of the electric utility and a normal part of that utility's general rate structure." Id.
Because of the amendment to RCW 35.92.050, Seattle brought a postjudgment motion in the trial court, arguing that Judge Robinson's grounds for invalidating the rate ordinance (lack of authority and illegal tax) were nullified by the new law. The Seattle v. Sonntag postjudgment motions were assigned to Judge DuBuque, who was already presiding over the related class action in Okeson v. Seattle.
In Seattle v. Sonntag, Judge DuBuque granted Seattle's motion to vacate Judge Robinson's original summary judgment order invalidating the 1999 rate ordinance. Judge DuBuque also granted summary judgment to Seattle because of the 2002 legislation. The State, removing itself as an active litigant, argued that the Seattle v. Sonntag appeal should be dismissed because the amendment to RCW 35.92.050 rendered the controversy moot. The State went on to note that it did not concede that the amendment had retroactive effect or that it was sufficient to authorize cities to impose taxes on utility customers. Judge DuBuque then allowed Okeson to intervene in the Seattle v. Sonntag case.
In the Okeson v. Seattle class action, Judge DuBuque denied the ratepayers' motion for partial summary judgment and granted Seattle's summary judgment motion, based on the 2002 legislation. The parties agreed to dismiss the Seattle v. Sonntag appeals previously filed with the Court of Appeals as moot. The two cases were consolidated on direct appeal to this court and we granted discretionary review.

II. ISSUE
Does either Ordinance 119747 or RCW 35.92.050 authorize a municipality to incorporate the expenses of city streetlights within electrical rates charged to the customers of the city's electrical utility?

III. STANDARD OF REVIEW
On appeal from a summary judgment order, the appellate court engages in the same inquiry as the trial court. Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co., 124 Wash.2d 618, 623-24, 881 P.2d 201 (1994). The issues in this case pertain to constitutional limitations and statutory authority, and so are issues of law to be determined de novo by this court. Our Lady of Lourdes Hosp. v. Franklin County, 120 Wash.2d 439, 443, 842 P.2d 956 (1993).

IV. ANALYSIS
Our analysis begins with Ordinance 119747 and whether it was lawful when initially passed in 1999. Next, we analyze what, if any, effect the 2002 amendment to RCW 35.92.050 had on Ordinance 119747 and whether the amended legislation applies retroactively.
To determine if either Ordinance 119747 or RCW 35.92.050 authorize City Light to incorporate the costs of city streetlights within the electric rates to its customers in Seattle, we must answer several questions. First, we must determine if providing streetlights is a governmental or a proprietary function of the government. Second, if we determine that it is a general governmental function, we must determine if the costs imposed upon City Light customers are a tax or a fee. Third, if the costs imposed on City Light customers are a tax, we must next determine if the tax was lawfully imposed.
A. The Legality of 1999 Seattle Ordinance 119747.
1. Providing public streetlights is a governmental function.
We must first determine if providing streetlights is governmental or proprietary in nature. A municipal corporation is generally considered to act in one of two capacities  a governmental capacity or a proprietary capacity. This court takes "different approaches to construing municipal powers according to whether the power exercised is governmental or proprietary in nature." City of Tacoma v. Taxpayers of Tacoma, 108 Wash.2d 679, 693, 743 P.2d 793 (1987).
*1285 "When a governmental function is involved, less opportunity exists for invoking the doctrines of liberal construction and of implied powers." Id. at 694, 743 P.2d 793. However, when the legislature authorizes a municipality to engage in a business, it may exercise its business powers in very much the same way as a private individual. Id. If providing streetlights is a proprietary function of government, and the actions are within the purpose and object of the enabling ordinance and no express limitations apply, then judicial review of the costs imposed by Ordinance 119747 would be limited to whether the costs were arbitrary, capricious, or unreasonable. Id. at 695, 743 P.2d 793. If, however, providing streetlights is a governmental function, we must then determine if Ordinance 119747 imposes a tax or a fee upon ratepayers. The answer to that question reveals the appropriate methods the government may use to impose such costs.
The principal test in distinguishing governmental functions from proprietary functions is whether the act performed is for the common good of all, or whether it is for the special benefit or profit of the corporate entity. Lakoduk v. Cruger, 47 Wash.2d 286, 288-89, 287 P.2d 338 (1955) (citing Hagerman v. City of Seattle, 189 Wash. 694, 701, 66 P.2d 1152 (1937)). A city's electric utility serves a proprietary function of the government. Taxpayers of Tacoma, 108 Wash.2d at 694, 743 P.2d 793 ("Actions taken pursuant to RCW 35.92.050 serve a business, proprietary function, rather than a governmental function."). The electric utility operates for the benefit of its customers, not the general public. For example, this court long ago determined that water rates are not taxes because the "consumer pays for a commodity which is furnished for his comfort and use." Twitchell v. City of Spokane, 55 Wash. 86, 89, 104 P. 150 (1909). The same reasoning applies to electric utility customers. A utility will not provide electricity to a customer that does not request service. Thus, the electric utility is a proprietary function of government.
Providing streetlights, however, is a governmental function because they operate for the benefit of the general public, and not for the "comfort and use" of individual customers. City Light customers have no control over the provision or use of streetlights. Hence, while the electric utility itself is a proprietary function of government, the maintenance of streetlights is a governmental function.
Seattle stated that, although providing street lighting has been recognized as a governmental function, it is only in certain contexts (tort liability for municipalities). Br. of Resp'ts at 19 (citing 18 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 53.44 (3d ed.1996)). We find Seattle's attempt to differentiate the context unpersuasive. Providing streetlights cannot be a proprietary function for some purposes, but a governmental function for others. Seattle further contends that the cost to maintain fire hydrants is also a governmental function, yet that cost has been paid by water ratepayers. Br. of Resp'ts at 17-21. The fire hydrant issue is not before us, and the mere fact that fire hydrant costs have been included in the water rate (and never been challenged) does not determine the issue of payment for streetlights, presented here.
2. Ordinance 119747 imposes a tax, not a fee.
Because providing streetlights is a governmental function of the city, we must next determine if Ordinance 119747 imposed a tax or a fee to pay for those costs. Determining what is a tax or a fee is often quite difficult. Dean v. Lehman, 143 Wash.2d 12, 28, 18 P.3d 523 (2001) ("It is difficult, however, to pigeonhole these charges."). Generally speaking, taxes are imposed to raise money for the public treasury. Id. at 25, 18 P.3d 523 (citing WASH CONST. art. VII, § 1); State v. Case, 39 Wash. 177, 182, 81 P. 554 (1905). A local government does not have the power to impose taxes without statutory or constitutional authority. Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995).
Charges imposed for purposes other than raising money for the public treasury, such as for the regulation of an activity, are not taxes and are not subject to constitutional *1286 taxation constraints. Samis Land Co. v. City of Soap Lake, 143 Wash.2d 798, 805, 23 P.3d 477 (2001); Dean, 143 Wash.2d at 25, 18 P.3d 523. "Where the charge is related to a direct benefit or service, it is generally not considered a tax or assessment." King County Fire Prot. Dists. No. 16, No. 36, & No. 40 v. Housing Auth. of King County, 123 Wash.2d 819, 833, 872 P.2d 516 (1994). This court collectively refers to nontax charges by a governmental entity as "regulatory fees," a rather broad category that can "include a wide assortment of utility customer fees, utility connection fees, garbage collection fees, local storm water facility fees, user fees, permit fees, parking fees, registration fees, filing fees, and license fees." Samis, 143 Wash.2d at 805, 23 P.3d 477. A local government may impose a fee under its general police power. WASH CONST. art. XI, § 11; Covell, 127 Wash.2d at 878, 905 P.2d 324.
Because of the different restrictions for imposing taxes versus imposing fees, correctly classifying a charge as either a tax or a fee is critical. "There is thus an inherent danger that legislative bodies might circumvent constitutional constraints ... by levying charges that, while officially labeled `regulatory fees,' in fact possess all the basic attributes of a tax." Samis, 143 Wash.2d at 805, 23 P.3d 477. A city could then avoid the constitutional limitations on taxes by simply charging its citizens a "fire department fee" or a "police fee."
To assist in determining if Ordinance 119747 involves a tax or a regulatory fee, we employ a three-part test outlined in Covell. First, whether the primary purpose of the city is to raise revenue for general governmental purposes, or whether the primary purpose is to regulate. Second, whether the money collected must be allocated only to the authorized regulatory purpose. And, third, whether there is a direct relationship between the fee charged and the service received by those who pay the fee, or between the fee charged and the burden produced by the fee payer. Covell, 127 Wash.2d at 879, 905 P.2d 324.
a. Purpose of cost shifting is to raise revenue. The first Covell factor questions whether the purpose of the cost is to raise revenue for general governmental purposes or to regulate the service for which the cost is imposed. It is a misnomer to simply ask whether the charges raise revenue, because both taxes and regulatory fees raise revenue. What is important is the purpose behind the money raised  a tax raises revenue for the general public welfare, while a regulatory fee raises money to pay for or regulate the service that those who pay will enjoy (or to pay for or regulate the burden those who pay have created). Id.; Samis, 143 Wash.2d at 806, 23 P.3d 477.
In this case, it is apparent that the primary purpose behind shifting the costs for lighting the streets is to free up revenue for the city, and not to regulate streetlights. There is no regulatory purpose because the electricity used by a City Light customer has no relationship to the amount of energy used by the streetlights. This indicates that Ordinance 119747 is a tax, not a fee.
b. Money deposited to Light Fund. The second Covell factor mandates that the money raised by the increased rates must be allocated for the authorized regulatory purpose to qualify as a regulatory fee and not a tax. Covell, 127 Wash.2d at 879, 905 P.2d 324; Samis, 143 Wash.2d at 809-10, 23 P.3d 477. The rate increases here are apparently used to pay for street lighting and streetlight improvements. This factor points to the cost shifting as a regulatory fee, and not a tax. Although depositing funds into a special account established for the stated purpose indicates it is a fee, it is important that it serves a regulatory purpose. All funds could be deposited into special accounts, and that would not necessarily turn taxes into fees. If the costs imposed do not regulate the activity, then the increased rates would, by definition, not be allocated for an authorized "regulatory" purpose. They would simply be a clever device by which taxes are guised as fees by virtue of the account in which they are deposited. Because the charges for street lighting serve no regulatory purpose, Ordinance 119747 cannot impose a fee just by putting those costs into the Light Fund. Although this factor does not indicate the *1287 charges are taxes, it also does not indicate the charges are fees.
c. Relationship between fee and service received or burden produced. The third Covell factor requires that there be a "direct relationship" between the fee charged and either a service received by the fee payers or a burden to which they contribute. Covell, 127 Wash.2d at 879, 905 P.2d 324; Samis, 143 Wash.2d at 811, 23 P.3d 477. The charge does not need to be individualized according to the exact benefit accruing to, or burden produced by, the fee payer. Covell, 127 Wash.2d at 879, 905 P.2d 324. "[O]nly a practical basis for the rates is required, not mathematical precision." Teter v. Clark County, 104 Wash.2d 227, 238, 704 P.2d 1171 (1985).
Although the electricity rate increase relates to the service received (i.e., lighting streets), it is impossible to quantify how much streetlight a person uses, or the burden a person produces that necessitates a streetlight. All City Light customers pay an increased rate, regardless of the amount of their individual usage of streetlights. The rate increase and the service received or burden produced by the City Light customers appears unrelated.
Based on the three-part Covell analysis, Ordinance 119747 imposed a tax, not a regulatory fee. Although the money raised was ostensibly allocated to pay for a regulatory purpose (lighting streets), there was no relationship between the fee imposed on City Light customers and the streetlight service they received or the burden that they produced. Additionally, the shifting of the cost from Seattle's general budget to the City Light ratepayers was a revenue-raising ploy for the city's general budget, and not a means of regulating streetlight usage, even though the revenues collected as part of the electricity rate remained only in the Light Fund.
3. Other statutory authority authorizing streetlight charges not affected.
It is important to distinguish between the provision of streetlights for the general city populace presented in this case versus the provision of streetlights for specially benefited persons or property. Our decision does not address other statutory authority to provide street lighting systems as a service to local or specially benefited property. For example, statutory authority exists to charge customers for streetlights if the street lighting system is created as a local improvement[3] or under the auspices of a water or sewer district.[4] Although we do *1288 not now rule on the legality of those other statutory frameworks, we note that they are qualitatively different from the issue presented in this case. Street light systems in local improvement districts or water or sewer districts are designed to benefit particular customers of the service. The street light system at issue here benefits the general public.
4. Tax imposed by Ordinance 119747 was unlawful.
Because Ordinance 119747 is a tax, we look to see if it was lawfully imposed. We hold that Seattle violated constitutional restrictions on the method of imposing such a tax. The tax also exceeded the six percent statutory limit on such taxes.
a. Tax was unlawfully imposed. For a municipality to exercise the power to tax, it must have express statutory authority. Hillis Homes, Inc. v. Snohomish County, 97 Wash.2d 804, 809, 650 P.2d 193 (1982) (Hillis Homes I). Article VII, section 5 of the Washington Constitution states: "No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." Ordinance 119747 does not explicitly state that it imposes a tax, nor does it state the object to which such a tax shall be applied. Therefore, the method of imposing the street lighting tax  by adoption of Ordinance 119747  violated the state constitution.
6. Tax violated six percent statutory limit. Even if Ordinance 119747 specifically authorized a tax, the tax would have exceeded the statutory limit on such taxes. A city may, under certain circumstances, impose a tax on an electric utility. RCW 35.21.860, .865. But state law prohibits a city from imposing a tax on "the privilege of conducting an electrical energy ... business" in excess of six percent, unless first approved by voters. RCW 35.21.870(1). City Light already imposed the maximum six percent tax before Ordinance 119747 was passed. CP 1318, 1837. Therefore, passage of Ordinance 119747 increased the tax burden on City Light's ratepayers in excess of the statutory six percent ceiling. Because voters did not first approve the tax increase that exceeded six percent, the ordinance violated RCW 35.21.870(1).
5. Appellants' statutory arguments need not be addressed.
Appellants raise two other statutory arguments. First, they argue that Ordinance 119747 violates the local government accounting statute, RCW 43.09.210. This statute prohibits one government entity from receiving services from another government entity for free or at reduced cost absent a specific statutory exemption. State v. Grays Harbor County, 98 Wash.2d 606, 610, 656 P.2d 1084 (1983). Second, appellants contend that Ordinance 119747 violates RCW 80.28.080. RCW 80.28.080 states that no electric company shall furnish its product at free or reduced rates except to certain specified entities, among which cities are not included. Furthermore, state law prohibits electric companies from granting undue preferences to cities. RCW 80.28.090, .100. State law also mandates that electricity rates "shall be just, fair, reasonable and sufficient." RCW 80.28.010(1). Appellants contend that Ordinance 119747 required City Light to provide Seattle free electricity in violation of these statutes. However, we could not address these statutory questions without first determining if Ordinance 119747 imposed a tax or a fee. Because we rule that the ordinance imposed an unconstitutional tax, the statutory issues are moot.
B. The 2002 Legislation Amending RCW 35.92.050 Did Not Authorize Imposition of a Tax.
With the passage of Laws of 2002, ch. 102, the Washington Legislature allowed municipalities *1289 to incorporate the cost of streetlights within the general rate structure of their electric utilities. Despite this statutory amendment, the increased rate that City Light ratepayers pay for streetlight maintenance still constitutes an unlawful tax.
1. Providing streetlights is not a proprietary function.
Inclusion of streetlights within RCW 35.92.050 does not transform that service into a proprietary function. Streetlights are still provided for the welfare of the general public, at the discretion of the city and not individual ratepayers.
2. Streetlight costs are still taxes, not fees.
Despite the legislature's 2002 amendment, the charge for maintaining streetlights is still a tax, because shifting the streetlight costs to City Light ratepayers is still designed to raise revenue for the general city budget. There is also no relationship between the electricity used by a City Light customer and the energy used by streetlights.
3. The 2002 legislation does not authorize a tax.
There must be express statutory or constitutional authority for a local government to impose a tax. Hillis Homes I, 97 Wash.2d at 809, 650 P.2d 193. If there is any doubt about a legislative grant of taxing authority to a municipality, it must be denied. Pac. First Fed. Sav. & Loan v. Pierce County, 27 Wash.2d 347, 353, 178 P.2d 351 (1947). The 2002 amendment to RCW 35.92.050 fails to lawfully authorize a tax to pay for streetlights. It fails the constitutional requirement of "stat[ing] distinctly the object of the [tax] to which only it shall be applied." WASH. CONST. art. VII, § 5.
C. Legislation Retroactivity Not Addressed.
Because the 2002 legislation does not authorize imposition of a tax, we need not address whether it applies retroactively.

V. CONCLUSION
Maintenance of a street lighting system is a governmental function. The street lighting charges Ordinance 119747 imposes on City Light's ratepayers is a tax. The tax was not lawfully imposed, a defect that the 2002 amendment to RCW 35.92.050 does not cure. We reverse.
WE CONCUR: ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ.
NOTES
[1] This ordinance was primarily based on a similar agreement City Light had made with the city of Shoreline. When renegotiating the franchise agreement with Shoreline, City Light agreed to provide streetlight services to Shoreline as part of its rate-based electric utility service, to begin in 1999. Under this agreement, all City Light customers in Shoreline would bear the cost to maintain Shoreline's streetlights through an increase in rates. City Light would no longer bill Shoreline for providing electricity to Shoreline's streetlights. City Light subsequently reached similar agreements with other franchise cities.
[2] The parties refer to RCW 43.09.210 as the State Accountancy Act; however, it is not a short title for this statute. For accuracy, we will refer to RCW 43.09.210 as the local government accounting statute.
[3] RCW 35.43.040(11) allows cities to provide street lighting systems as a "local improvement" and to collect special assessments on property specially benefited by those streetlights. The constitution allows the legislature to grant authority to cities to make local improvements by special assessment or special taxation of property benefited. WASH. CONST. art. VII, § 9; Ankeny v. City of Spokane, 92 Wash. 549, 552, 159 P. 806 (1916). To be able to charge private property for a local improvement, two requirements must be met: "(1) [T]he improvement must be of a public nature, as contradistinguished from one purely private ...; and (2) it must confer a special benefit on the property sought to be specially charged with its creation and maintenance, over and above that conferred generally upon property within the municipality." Id. Thus, in Ankeny this court upheld assessments imposed by Spokane on specially benefited property for the estimated costs of maintaining streetlights because the system covered only that benefited property, and did not extend over the city at large. Id. at 560, 159 P. 806. The issue we are deciding, however, involves a street lighting system that extends over the city at large and is for the benefit of the general public.
[4] The legislature has given water and sewer districts the authority to "acquire, construct, maintain, operate, and develop street lighting systems." RCW 57.08.060. The respondents point out that cities may assume the jurisdiction of such districts by meeting the requirements of RCW 35.13A.020. Br. of Resp'ts at 17. However, the statutory requirements governing the provision of streetlights by water and sewer districts distinguish those street lighting charges from the charges imposed by City Light in this case. A water or sewer district must first delineate the boundaries of the area that the proposed system will serve. RCW 57.08.060. The district must give proper notice before conducting a public hearing on the proposed system. Id. The district cannot establish the street lighting system if a petition opposing the proposed system is signed by at least 40 percent of the voters registered in the area to be served by the system. Id. Any charges imposed by the district for street lighting must be done in the same manner as the charges imposed for water service. Id. These rates and charges are set pursuant to RCW 57.08.081, and must be uniform for the same class of customer or service and facility. RCW 57.08.081. The district must consider numerous factors when classifying customers of the water or sewer district, meaning rates will be adjusted to reflect reasonable differences between customers. Id. By contrast, Ordinance 119747 does not distinguish among customers using streetlights; it merely shifts the burden of paying for streetlights from the general fund to all City Light customers in Seattle. Because of these statutory requirements, the provision of streetlights to customers of water and sewer districts is more analogous to a service provided to specific customers than it is to a general governmental function provided to the public at large.