Janice Niemi, Chair State Gambling Commission P. O. Box 42400 Olympia, WA 98504-2400
Dear Ms. Niemi:
By letter previously acknowledged, the Commission has requested our opinion on several questions relating to (1) the practice employed by several recent sessions of the Legislature in transferring money, as part of the biennial operating budget, from the gambling revolving fund to the state general fund, and (2) recent actions of the Office of Financial Management (OFM) in reducing the Gambling Commission's allotments (that is, the Commission's authority, established quarterly, to spend money in the gambling revolving fund). In connection with these activities, you have posed the following questions (paraphrased for clarity):
 1. Are the legislative transfers of funds from the gambling revolving fund to the general fund consistent with RCW 9.46.100 establishing the revolving fund and defining its use?
 2. Do the transfers of money from the gambling revolving fund to the general fund constitute a tax? More specifically, do the transfers violate the state/tribal gambling compacts the state has entered into, or the Indian Gaming Regulatory Act (25 U.S.C. §§ 2701-2721) (IGRA) authorizing the compacts?
 3. Does the Office of Financial Management (OFM) have authority to adjust and reduce the Gambling Commission's spending authority through the statutory allotment process?
 BRIEF ANSWERS
We decline to answer the first two questions, because they are asking us to address the validity of duly enacted acts of the state Legislature, as more fully explained in the analysis below. The Gambling Revolving Fund is subject to the allotment authority of the Governor and OFM, but the fund's non-appropriated status changes the nature of the allotment authority.
 ANALYSIS
The Gambling Act, now codified as RCW 9.46, was enacted in 1973. Laws of 1973, 1st Ex. Sess, ch. 218. Section 10 of the Act, codified as RCW9.46.100, creates the gambling revolving fund and describes its functions.[1] The opening sentence of the section provides that "[t]here is hereby created the gambling revolving fund which shall consist of all moneys receivable for licensing, penalties, forfeitures, and all other moneys, income, or revenue received by the [gambling] commission." RCW 9.46.100 (brackets added). The statute also provides that "[d]isbursements from the revolving fund shall be on authorization of the commission or a duly authorized representative thereof." Id.
Furthermore, "[a]ll expenses relative to commission business, including but not limited to salaries and expenses of the director and other commission employees shall be paid from the gambling revolving fund."Id. From this language, it is clear that all fees, penalties, and other income generated by the gambling commission must be deposited in the revolving fund, and the commission has general statutory authority to use money in the revolving fund to pay for its operations.
Your questions are occasioned by a recent legislative practice of transferring money out of the gambling revolving fund and into the state general fund, presumably to pay for unspecified general operations of state government. As early as 1991, the Legislature instructed the state treasurer to transfer one million dollars from the gambling revolving fund to the general fund. Laws of 1991, 1st Sp. Sess., ch. 16, § 917. In 2002, the Legislature amended RCW 9.46.100 by adding the following language:
 During the 2001-2003 fiscal biennium, the legislature may transfer from the gambling revolving fund to the state general fund such amounts as reflect the excess fund balance of the fund and reductions made by the 2002 supplemental appropriations act for administrative efficiencies and savings.
Laws of 2002, ch. 371, § 901.[2] The 2004 session of the Legislature again amended the statute to include the following:
 During the 2003-2005 fiscal biennium, the legislature may transfer from the gambling revolving fund to the problem gambling treatment account, contingent on enactment of chapter . . . Laws of 2004 (Second Substitute House Bill No. 2776, problem gambling treatment). Also during the 2003-2005 fiscal biennium, the legislature may transfer from the gambling revolving fund to the state general fund such amounts as reflect the excess nontribal fund balance of the fund. The commission shall not increase fees during the 2003-2005 fiscal biennium for the purpose of restoring the excess fund balance transferred under this section.
Laws of 2004, ch. 276, § 903.[3]
 1. Are the legislative transfers of funds from the gambling revolvingfund to the general fund consistent with RCW 9.46.100 establishing therevolving fund and defining its use?
Your questions reflect a concern that the Legislature's actions in transferring money out of the gambling revolving fund are inconsistent with the original intent behind the creation of the fund. Certainly, the statute provides that all income derived from the commission's operations be placed in the revolving fund and authorizes the commission to use the money in the fund, without appropriation,[4] to pay for the commission's operations.
We note at this point that RCW 9.46.100 contains no language specifically prohibiting the use of money in the fund for non-gambling purposes and, more to the point, has never contained language limiting the authority of the Legislature itself to transfer money out of the fund or to use it for non-gambling purposes. Each of the transfers discussed above was expressly authorized by a specific amendment to RCW 9.46.100
itself.[5] Thus, there is no doubt about the Legislature's statutory
authority to make the transfers in question.
It is clear from your request, however, that the Commission is posing this question largely because of concerns about the constitutionality of the acts authorizing the transfers. Our office has a longstanding policy of declining to express an opinion on the constitutionality of a duly enacted statute. One of our statutory duties is to defend the constitutionality of state statutes if they are challenged in litigation, and this role would be seriously compromised if we took an official position on the constitutionality of a statute we are later called on to defend. Accordingly, we decline to address the constitutionality of the legislative acts transferring money out of the gambling revolving fund.[6]
 2. Do the transfers of money from the gambling revolving fund to thegeneral fund constitute a tax? More specifically, do the transfersviolate the state/tribal gambling compacts the state has entered into, orthe Indian Gaming Regulatory Act (25 U.S.C. §§ 2701-2721) (IGRA)authorizing the compacts?
Your second question is whether the Legislature's action converts some or all gambling fees into "tax" and, if so, whether there are violations of IGRA or the state/tribal compacts entered pursuant to IGRA. As an initial matter, we note that in the current biennium, the Legislature transferred "the excess nontribal fund balance of the fund." Laws of 2004, ch. 276, § 903 (emphasis added). However, to the extent this question seeks to ascertain whether the transfers of money from the gambling revolving fund to the general fund result in some form of taxation of tribes which is in violation of federal law or in breach of the state's contractual commitments, we decline to address the question. The same policy reasons for declining to opine on the constitutionality of state laws apply to questions about the validity of duly enacted state statutes in light of supervening federal law or of constitutionally protected contract obligations. Other than for this purpose, there seems little reason for examining whether the transfer could be defined as a "tax".[7]
 3. Does the Office of Financial Management (OFM) have authority toadjust and reduce the Gambling Commission's spending authority through thestatutory allotment process?
Your third question concerns the applicability of RCW 43.88 (the state's Budget and Accounting Act) to the gambling commission's management of the gambling revolving fund. RCW 43.88 sets forth the law with respect to fiscal management by state agencies. It contains instructions for state agencies relating to budget development, describes the process for adopting the state's operating and capital budgets, and directs the development and operation of a statewide accounting and reporting system to assure that state agencies manage their funds consistently with budget requirements and other state laws. Much of the law in this area concerns funds which are subject to appropriation by the Legislature and, for many purposes, allotments and expenditure plans serve the purpose of assuring that appropriated funds are spent consistently with the budget act containing the relevant appropriations. However, as noted below, parts of RCW 43.88 apply to non-appropriated funds as well.
The term "allotment" is closely related to the term "statement of proposed expenditures," which is defined as "a plan prepared by each agency that breaks each appropriation out into monthly detail representing the best estimate of how the appropriation will be expended." RCW 43.88.020(24). The term "allotment of proposed expenditure" is defined as "the agency's statement of proposed expenditures, the director of financial management's review of that statement, and the placement of the approved statement into the state budgeting, accounting, and reporting system." RCW 43.88.020(23). RCW43.88.110 sets forth the expenditure programs and the allotment and reserve procedures to be followed by the executive branch for public funds. Essentially, the allotment for each agency is developed collaboratively between the agency and OFM. Id. RCW 43.88.110(8) authorizes the governor and OFM to revise agency expenditure plans from time to time for stated reasons, especially if an account or fund projects a deficit. RCW 43.88.160(1) authorizes OFM to develop and prescribe a uniform accounting system for state agencies.
The applicability of RCW 43.88 to the gambling commission presents interesting issues. RCW 9.46.100, establishing the gambling revolving fund, includes the following sentence:
 In order to maintain an effective expenditure and revenue control the gambling revolving fund shall be subject in all respects to chapter 43.88 RCW but no appropriation shall be required to permit expenditures and payment of obligations from such fund.
This sentence establishes two things about the gambling revolving fund: (1) no appropriation is required for spending money in the fund, but (2) otherwise, the fund "shall be subject in all respects to chapter 43.88
RCW."[8]
Given the length and complexity of RCW 43.88, we will not attempt here to decide precisely how various parts of the chapter can be applied to the gambling revolving fund and which language in the budget acts is inapplicable to a fund which is not subject to legislative budget appropriation. As a general matter, RCW 9.46.100 appears to make all of the provisions in RCW 43.88 applicable to the gambling revolving fund except those that are inconsistent with the non-appropriated nature of the fund. Therefore, we start from the premise that the allotment process applies to the gambling revolving fund.
The allotment process described in RCW 43.88.110 is closely tied to development and implementation of the state budget and the appropriations contained therein. However, the process can be applied to a non-appropriated fund. First, the cited language from RCW 9.46.100
clearly requires the Gambling Commission to follow the accounting and reporting system prescribed by OFM under RCW 43.88. Such a system guarantees that the Gambling Commission is accountable for its expenditures and that the Commission's financial records can be reviewed and easily compared to equivalent records maintained by other agencies.
As noted above, the "allotment" process is primarily related to the development of expenditure plans in which agencies, in collaboration with OFM, allocate their budget appropriations throughout the fiscal year and/or the biennial budget period. Thus, RCW 43.88.110(1) uses the phrase "allotments of an appropriation," and RCW 43.88.110(3) ties the submission of allotment plans to the budget process. This appears to have two basic purposes: to assure that agencies do not spend at such a rate as to exhaust their budget appropriations before the end of the fiscal period, and to assure that agencies are spending their funds in accordance with any conditions set forth in the budget or otherwise in state law. In addition, the allotment process gives the Governor and OFM tools to deal with the possible need to make across-the-board reductions if a cash deficit is projected in a fund. RCW 43.88.110(8).
As noted earlier, the Gambling Commission has authority to determine a plan of expenditure for the non-appropriated Gambling Revolving Fund. RCW9.46.100. This plan could be submitted to OFM and the Governor for their review and approval, just as other agencies submitted their expenditure plans. However, since the Gambling Revolving Fund is not appropriated, OFM cannot use the appropriation act as a "yardstick" to evaluate and approve (or modify) the Commission's appropriation plan. Furthermore, since the budget contains no appropriation to the Gambling Commission, it is unlikely to contain language conditioning or limiting expenditures from the Gambling Revolving Fund.[9]
Given this situation, it appears that applying allotment controls to a non-appropriated fund serves the related purpose of assuring that agency expenditures do not result in putting a fund into a "cash deficit". Thus, for instance, OFM could review (and potentially revise) the Gambling Commission's expenditure plan if OFM were convinced that the Commission's plan was based on overly optimistic estimates of revenue to the fund, or if the Commission proposed to spend at such a rate as to exhaust the fund balance. Likewise, OFM could object if the Commission proposed to expend its funds in a fiscally irresponsible manner, or in a manner in contravention of legislative intent as expressed in statute.
Since RCW 9.46.100 itself contains language indicating the Legislature's intent "to maintain an effective expenditure and revenue control," and in that light has made the gambling revolving fund "subject in all respects to chapter 43.88 RCW," we conclude that the Legislature intended to make the revolving fund subject to allotment control by OFM as described above.[10] Although we have provided some general principles, the precise ways in which the Gambling Commission is subject to RCW 43.88 will undoubtedly require some case-by-case consideration.
We trust the foregoing will be of assistance.
Very truly yours,
JAMES K. PHARRIS Senior Assistant Attorney General
:pmd
_________________________________
[1] The full text of RCW 9.46.100 is attached as Appendix A.
[2] This language no longer appears in the text of RCW 9.46.100 because it was removed by the 2004 amendment, discussed below.
[3] Second Substitute House Bill 2776 was not enacted by the 2004 session, so the first quoted sentence never became operative.
[4] The statute expressly provides that "no appropriation shall be required to permit expenditures and payment of obligations from such fund." RCW 9.46.100. This language is discussed more fully in our answer to your question.
[5] The 1991, 2002, and 2004 transfers were all in the form of amendments to RCW 9.46.100. All three of the amendatory sections were enacted as portions of biennial operating budget bills, each of which bore the title "an act relating to fiscal matters." See, e.g., Laws of 2004, ch. 276.
[6] We do note in passing that the courts have allowed the Legislature broad freedom in dealing with fiscal matters through appropriation acts, including the practice of amending "permanent" statutes with language in the operating budget. Retired Pub. Employees Coun. v. Charles,148 Wn.2d 602, 62 P.3d 470 (2003).
[7] Your letter also referenced article VII, section 5 of the Washington Constitution, which provides: "No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied." In State v.Sheppard, 79 Wash. 328, 140 P. 332 (1914), this section was held to apply only to property taxes and not to license fees. The Sheppard opinion noted that the fees under consideration in that case were not used for regulatory purposes. We note that in the recent decision in Okeson v.City of Seattle, 150 Wn.2d 540, 78 P.3d 1279 (2003), the Court applied this provision to a charge for maintaining streetlights without stating whether those charges would be considered taxes on property. We have reviewed the briefs filed in that case, which did not mention the holding of State v. Sheppard and many subsequent decisions of the Washington Supreme Court citing State v. Sheppard with approval. Therefore, we do not read Okeson as intending to overrule State v. Sheppard.
[8] It is unusual that the gambling revolving fund is not subject to legislative appropriations. In RCW 43.88.190 (enacted before the Gambling Act was passed), the Legislature declared that "[r]evolving funds shall not be created by law except to finance the operations of service units, or units set up to supply goods and services to other units or agencies." This language was impliedly amended by the enactment of RCW 9.46.100, with its express language creating the gambling revolving fund as a revolving fund not subject to appropriation. Given the Legislature's reluctance to create non-appropriated revolving funds, except for inter-agency service funds, it is not surprising that the Legislature retained considerable budget control over the fund by making it fully subject to RCW 43.88. Furthermore, the Legislature could at any time amend the law and make the fund fully subject to appropriation.
[9] As noted above, the 2004 budget directs the Commission not to increase fees for the purpose of restoring the money transferred from the revolving fund. Laws of 2004, ch. 276, § 903. This language does not purport to limit how the Commission will spend its funds, however; nor could we find any other examples of budget provisos imposing conditions on expenditures of money in the gambling revolving fund.
[10] For examples of funds not subject to either appropriation or allotment, see RCW 43.23.230 (agricultural local fund) and RCW47.04.220(4) (miscellaneous transportation programs account). By contrast, the Legislature has created several other funds or accounts which are not appropriated but are subject to allotment. Examples include the grain inspection revolving fund (RCW 22.09.830(1), the administrative accounts for the uniform medical plan and the uniform dental plan (RCW 41.05.143), and the data processing revolving fund (RCW43.105.080). We do not attempt here to define how the application of the allotment controls to these various funds might work.