**WASTE ACTION PROJECT; and Clark County Natural Resources Council, Plaintiff,**

v.

**CLARK COUNTY, Defendant.**

**No. C98–5271RJB.**

United States District Court, W.D. Washington, at Tacoma.

Jan. 13, 1999.

**1050**

John S. Karpinski, Vancouver, WA, Richard A. Smith, Smith & Lowney, PLLC, Seattle, WA, for Plaintiffs.

E. Bronson Potter, Clark County Prosecuting Attorney's Office, Vancouver, WA, for Defendant.

Saundra Doyle, U.S. Dept. of Justice, Washington, DC, pro se.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRYAN, District Judge.

This matter comes before the court on Plaintiffs' Motion for Partial Summary Judgment as to Liability (Dkt.# 9), and Defendant's Cross Motion for Summary Judgment re Liability (Dkt.# 28). The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

### SUMMARY JUDGMENT STANDARD

The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th Cir.1987).

The determination of the existence of a material fact is often a close question.

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., the preponderance of the evidence in most civil cases. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *T.W. Elec. Service Inc.,* 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Service,* 809 F.2d at 630 (relying on *Anderson, supra* ). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## FACTUAL BACKGROUND

The defendant, Clark County, owns and operates a municipal separate storm sewer system which discharges stormwater runoff from residential and mixed-use areas throughout the county. The discharges have been determined to contain amounts of copper, lead, and zinc beyond legal limits. Clark County has not obtained a National Pollutant Discharge Elimination System ("NPDES") permit despite repeated notifications and extensions of deadlines by the Department of Ecology ("DOE").

The plaintiffs are two separate non-profit citizen groups dedicated to the preservation, protection and enhancement of the natural resources and environment of Clark County and Washington state. Waste Action Project ("WAP") is a statewide organization and Clark County Natural Resources Council ("CCNRC") is a county organization.

On June 19, 1997, Clark County submitted Part I of its NPDES permit application. Submission of Part II of the applica-

tion was extended to October 1, 1998, and the county submitted Part II on September 30, 1998.

On March 17, 1998, the plaintiffs served notice of intent to file a citizens suit against Clark County for violations of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1342, 1342(p) because of its failure to obtain a NPDES permit. Copies of the notice were also mailed to the director of DOE and to the administrators of the Environmental Protection Agency ("EPA") and EPA Region 10. The complaint was filed on May 21, 1998, more than 60 days after the notices were served. The plaintiffs seek declaratory and injunctive relief, as well as civil penalties and costs of litigation. The parties moved for summary judgment on the issue of liability.

## ISSUES

The issues presented by the motions, in the order deemed efficient for the court are:

1) Whether the plaintiffs complied with the notice requirements of 33 U.S.C. § 1365(b).

2) Whether the plaintiffs have standing to bring this action.

3) Whether a NPDES permit is necessary for Clark County's stormwater discharge.

4) Whether the DOE is authorized to extend the deadlines for the NPDES application.

5) Whether the defendant is liable for violations of the CWA.

## DISCUSSION

*1) Whether the plaintiffs complied with the notice requirements of 33 U.S.C. § 1365(b).*

The defendant argues that the plaintiffs failed to comply with the notice requirements of the CWA, 33 U.S.C. § 1365(b) because they did not send a complete notice to the head of Clark County. The defendant contends that the "head" of

Clark County is the Board of County Commissioners, according to state law, and the notice sent to the County Commissioners did not include the attachment which identified the locations of the alleged violations. As a result, the defendant argues that the court lacks jurisdiction to consider the plaintiffs' claims.

The plaintiffs argue that Clark County is a municipal corporation and that they sent notice to its "managing agent," Public Works Director Ron Bergman and Public Works Environmental Services Division Manager Brian Carlson. Further, the plaintiffs contend that they did send notice to the County Commissioners which sufficiently complied with the CWA and its regulation.

The CWA requires that specific notice be given to the suspected polluter before a lawsuit is filed. 33 U.S.C. § 1365(a), (b). Section 1365(b) provides that "No action may be commenced—(1) under subsection (a)(1) of this section—(A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, . . ." 40 C.F.R. 135(a) sets out the essential contents of a notice which includes

> sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

In *Washington Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354 (1995), the Ninth Circuit found that the purpose of the sixty-day notice was

> to allow the parties time to resolve their conflicts in a nonadversarial time period. Once the suit is filed, positions harden and compromise is less likely. Second,

the notice alerts the appropriate state or federal agency, so administrative action may initially provide the relief the parties seek before a court must become involved.

There, the court found that the plaintiffs' notice was insufficient because it failed to identify two additional plaintiffs, thereby defeating the purpose of the notice because the defendants were unable to negotiate with all plaintiffs or to seek an administrative remedy during the notice period. *Id.*

■ A copy of the letter notice sent by the plaintiffs to the defendant and its agents is included as Ex. A to their complaint. Dkt. # 1. The attachment to the letter notice give the specific locations of the "outfall" sources. The attachment was not included with the copies sent to the County Commissioners or the County Auditor. Even without the attachments, the contents of the notice sufficiently fulfills the requirements of the CWA. The individuals primarily responsible for the alleged violations received the specific locations, and the County Commissioners were adequately informed. The defendant's motion should be denied on this issue and the plaintiffs' motion should be granted.

*2) Whether the plaintiffs have standing to bring this action.*

The defendant contends that WAC lacks standing to bring their citizens' suit because it has not shown evidence of any of the three elements of associational standing. The defendant also argues that CCNRC cannot meet the first element of associational standing, that is, that the plaintiffs cannot show that its members have standing to sue in their own individual right. Specifically, the defendant contends that Tom McConathy, a representative of the plaintiffs, has no expertise to render his opinions regarding the alleged polluted storm water runoff. The defendant contends that Mr. McConathy's observations of adverse water quality have

many other causes unrelated to storm water runoff, and that there is no causal connection between the alleged violations and the alleged injury to the county environment. Finally, the defendant argues that there is no showing that obtaining a NPDES permit will remedy the plaintiffs' alleged violations.

The plaintiffs argue that they easily meet the requirements for standing, based on the statements of Mr. McConathy. Although the plaintiffs contend that it is not necessary for them to prove WAC's independent standing if CCNRC has standing, they present a statement of the purpose of WAC, how it relates to the interest it seeks to protect in this lawsuit, and a showing by member William Feddeler as to standing as an individual.

■ An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

Preliminarily, the plaintiffs have cured the objections of the defendant as to the second and third prongs of associational standing of WAC by the statements of Mr. Wingard and Mr. Feddeler. The court will focus on the primary issue here: whether the plaintiffs' members have standing to sue in their own right.

■ In order to meet the first criteria, the plaintiffs must show three elements. First, the plaintiff must have suffered an "injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized, [the injury must affect the plaintiff in a personal and individual way] and (b) actual or imminent, not conjectural or hypothetical." Second,

there must be a causal connection between the injury and the conduct complained of, that is, the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely" (as opposed to "speculative") that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotations and citations omitted).

■ Here, the members of both organizations have shown that they suffer an injury in fact. Their representatives have stated how their recreational use of the water bodies in Clark County is affected by pollution fairly traceable to the discharges of the storm sewer system. To this extent, the plaintiffs have shown that Clark County is operating its sewer system without a permit, that the storm water flows into waterways used by the members, and that the discharge contributes to the kind of injuries alleged by the plaintiffs. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 557–58 (5th Cir.1996). Although Clark County argues that there are many potential sources of pollution, it does not deny that it has no permit, that the storm water runs into recreational waterways, and that the storm water are a contributing factor to the pollution of those waterways. The remaining question is the matter of degree of storm water pollution. As the plaintiffs point out, even if there are other contributing factors, the storm water collects pollutants from many of these other sources and brings that collection by discharge into the waterways.

As to the third element, the plaintiffs argue that the NPDES permit will insure that the discharges meet state water quality standards, and that the county will take steps to reduce the degree of pollution in stormwater discharges. The county contends that the injunctive relief sought by

the plaintiffs is now moot as it has submitted Part II of the NPDES permit application. The Declaration of Ann Wessel, submitted by the defendant in support of its motion, indicates that the Part II was not complete—that it was missing documentation of Clark County's "legal authority to control discharges into their municipal separate storm sewer system." There is no showing that this missing part of the application has been supplied. Further, submission of the application does not guarantee issuance of the permit. While the plaintiffs have shown that the permit will ensure some regulation and improvement of the affected waterways, the defendant have not shown that the permit is in place or that the permit will not improve the waterways.

For these reasons and the reasons stated by the plaintiffs, the plaintiffs has adequately showed that they have standing to pursue this lawsuit. The defendant's motion should be denied and the plaintiffs' motion should be granted on this issue.

*3) Whether a NPDES permit is necessary for Clark County's stormwater discharge.*

The defendant denies that issuance of a NPDES permit is necessary for its stormwater discharge. The county argues that the regulatory definitions of medium-size municipal separate storm sewer systems ("MS4") does not include Clark County, relying on 33 U.S.C. § 1342(p)(1)(D) which excepts discharges from a system serving a population of 100,000 but less than 250,-000. The defendant also argues that DOE's notices that it is required to apply for a NPDES permit do not purport to amend any contrary regulation.

The plaintiffs argues that the county was notified by DOE in 1993 that it needed to apply for and obtain a NPDES permit for its medium MS4 system, that its system does meet the definition of a medium MS4 as set forth in 40 C.F.R. § 122.26(b)(7), and that EPA has determined that Clark County is subject to the NPDES permit requirement. Finally, the plaintiffs contend that the county is relying on an outdated and temporary moratorium limiting the EPA's authority to require NPDES permits for certain stormwater discharges.

■ This issue does not require an in-depth discussion. Included in Ex. 1 to the Declaration of Richard A. Poulin is a letter from DOE to Clark County dated October 26, 1993. That letter states in part: "The U.S. Environmental Protection Agency, based on the results of the 1990 Decennial Census, has identified Clark County as meeting the population threshold for those municipalities who must apply for a NPDES storm water permit." Again, on January 3, 1995, DOE wrote to Clark County: "The requirement for municipal stormwater NPDES permits applies to municipalities with stormwater conveyance systems serving populations over 100,000. According to the results of the 1990 census, Clark County meets the population threshold and is therefore required to apply for a municipal stormwater NPDES permit." Ex. A to Declaration of E. Bronson Potter. The court notes that the defendant has not presented any evidence showing that it protested the necessity for obtaining a NPDES permit to either the DOE or the EPS at any point prior to this motion. Further, the defendant has submitted its application for the permit. Practically, the argument that the county is not required to obtain the permit is moot. In any event, this argument should be presented to the agencies that made the determination that the permit was necessary. The DOE and/or the EPA are not parties to this suit and are not in a position to defend their determinations that a permit is necessary for Clark County stormwater system. The court will not second-guess these agencies based on the showing in the defendant's motion. The defendant's motion should be denied and the plaintiffs' motion should be granted on this issue.

*4) Whether the DOE is authorized to extend the deadlines for the NPDES application.*

The plaintiffs argue, and the defendant concedes, that the DOE is not authorized to grant extensions for the NPDES application process. The parties rely on *Natural Resources Defense Council v. U.S. Environmental Protection Agency,* 966 F.2d 1292 (9th Cir.1992). Based on the parties' agreement, the defendant's motion should be denied and the plaintiffs' motion should be granted on this issue.

*5) Whether the defendant is liable for violations of the CWA.*

The plaintiffs argue that the county has violated the CWA. The elements identified by the Ninth Circuit are: 1) discharge 2) pollutants 3) to navigable waters 4) from point sources 5) without a NPDES permit. *Committee to Save Mokelumne River v. East Bay Mun. Dist.,* 13 F.3d 305, 308–09 (9th Cir.1993). The only element clearly disputed by the county is the fifth element. The court concluded, as discussed in No. 3 above, that a NPDES permit is necessary. The defendant does not have a NPDES permit. Therefore, the plaintiffs' motion for partial summary judgment as to liability should be granted. The defendant's cross motion should be denied.

Therefore, it is hereby

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment as to Liability (Dkt.# 9) is **GRANTED.** It is further

**ORDERED** that Defendant's Cross Motion for Summary Judgment re Liability (Dkt.# 28) is **DENIED.**

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.